**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Larry J. PEDIGO, Defendant/Appellant.**

Nos. 91–3636, 92–1043.

United States Court of Appeals,
Seventh Circuit.

Argued April 28, 1993.

Decided Dec. 1, 1993.

Order Modifying Opinion Feb. 10, 1994.

Byron G. Cudmore, Asst. U.S. Atty., Springfield, IL, argued, for U.S.

Kenneth L. Cunniff, Chicago, IL, argued, for defendant-appellant.

Before BAUER and COFFEY, Circuit Judges, and EISELE, Senior District Judge.*

EISELE, Senior District Judge.

## I. Factual Background

In January of 1991, Burt Merriman of Chandler, Arizona contacted Oscar Corral and agreed to transport approximately 300 pounds of marijuana from Arizona to Michigan. Corral delivered approximately 300 pounds of marijuana to Merriman, who rented a van and drove the marijuana up to Michigan. Merriman carried a loaded .38 revolver with him on the trip for "protection."

In Michigan, Merriman met with Corral and another gentleman named Joe Leutz. He left the 300 pounds of marijuana at Leutz's farmhouse. The three men agreed that Leutz would sell the marijuana and give the money to Corral.

While waiting for Leutz to sell the marijuana, Merriman departed for Pleasant Plaines, Illinois to visit family. While there, he met up with Jeff Roberts. Roberts stated that he might know someone who would be interested in selling marijuana, but he did not name the individual at that time. Meanwhile, Leutz had only been able to sell approximately 100 pounds of marijuana. Merriman drove back to Michigan and retrieved the 200 pounds that Leutz had been unable to sell. Merriman rented a U–Haul and drove to Springfield, Illinois. He stored the marijuana in a storage shed. He also left his revolver in the shed. He arranged a meeting with Jeff Roberts in New Berlin, Illinois on January 28, 1991. At that meeting, Merriman met the appellant, Larry Joe Pedigo.

Merriman and Pedigo agreed that Pedigo would sell twelve pounds of marijuana, and

---

* The Honorable Garnett Thomas Eisele, Senior District Judge for the Eastern District of Arkan- sas, is sitting by designation.

622

that he would pay Merriman $1,200 per pound. The two went to Pedigo's house to weigh the marijuana, which Merriman then gave to Pedigo on a "front" basis. Merriman saw several weapons in Pedigo's bedroom area, which was partially partitioned off from the "living room" area where the scales and drug paraphernalia were located. After weighing the marijuana, Merriman and Pedigo went to the airport where Merriman bought himself a one-way ticket back to Arizona. Merriman and Pedigo then went to the storage unit to get more marijuana for Pedigo to sell. At the storage shed, Merriman fronted Pedigo approximately fifteen additional pounds of marijuana.

The pair bought gauze and tape and Pedigo helped Merriman tape the $30,000 of proceeds from Luetz's sales to Merriman's body in preparation for the flight back to Arizona. Pedigo drove Merriman to the airport, where they exchanged phone numbers to "keep in touch." Merriman was stopped at a security check-point and arrested.

Eventually, Merriman agreed to cooperate with the police and consented to a tape-recorded telephone call to Pedigo. In the course of that taped conversation, Pedigo stated "I cashed out of I think four of them already or five this afternoon." He made a number of comments that implied that he had been dealing with customers, concluding with "I'm wanna work with ya for a long time."

A search warrant was executed at Pedigo's residence, which produced all but approximately five pounds of the approximately twenty-eight pounds that the defendant had received from Merriman. Five guns were also found at the residence, all legally registered to Pedigo. All were located in the bedroom area; the drug paraphernalia was located in the living room area.

Pedigo was tried and convicted of 1) conspiracy to distribute in excess of 100 kilograms of marijuana in violation of Title 21 U.S.C. § 846; 2) possession with intent to distribute a quantity of marijuana in violation of Title 21 U.S.C. § 841(a)(1); and 3) knowingly, during and in relation to possessing with intent to distribute a quantity of marijuana, using a firearm in violation of Title 18 U.S.C. § 924(c)(1). This appeal followed.

## II. Issues on Appeal

Pedigo challenges his conviction on numerous grounds. These issues will be addressed separately.

### A. Ineffective Assistance of Counsel

Pedigo argues that he received ineffective assistance of counsel from his appointed trial attorney. His specific allegations of ineffective assistance are:

1. Trial counsel failed to move for a bill of particulars requiring the government to specify which gun the government intended to rely upon in its charge that the defendant used a firearm during and in relation to a drug trafficking offense.

2. Trial counsel failed to move for a directed verdict at the close of the government's case or at the close of all the evidence, preventing the defendant from one avenue of acquittal on one or all charges of the indictment.

3. Trial counsel failed to timely file a motion for a new trial or for a judgment as a matter of law.

4. Trial counsel failed to move to exclude a witness who was allegedly in the courtroom prior to testifying.

5. Trial counsel failed to object to leading questions.

6. Trial counsel failed to call corroborators to defendant's story.

A claim of ineffective assistance of counsel must be scrutinized under the two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case. *Id.* at 687, 104 S.Ct. at 2064. The first part of this test is met when the defendant shows that counsel failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances.

The second part is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. A reviewing court is to apply a "strong presumption" that counsel was reasonably effective, requiring a showing that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064 (1984).

■ The first issue that the appellant raises is trial counsel's failure to ask for a bill of particulars as to which gun the government was relying upon in Count 3 of the indictment, which charged that the defendant "used" a gun in the course of a drug trafficking offense. While there are other problems with Count 3 of the indictment, which the Court will address thoroughly later in this opinion, the failure to ask for a bill of particulars does not fall below an objective standard of reasonableness. It thus fails the first prong of *Strickland*.

■ The next issue concerns trial counsel's failure to move for a directed verdict either at the close of the government's case or at the close of all of the evidence. Appellant has provided no facts that would indicate that there was a problem with the sufficiency of the evidence. Thus, there is no factual basis before this Court which would, if true, satisfy the prejudice prong of *Strickland*. Indeed, Appellant does not even argue prejudice on this specific issue.

The third issue deals with the failure to timely file post-trial motions. Again, Appellant does not specifically argue prejudice, and as the defendant is free to make the same arguments on appeal as he could in his post-trial motions, prejudice would be very difficult to establish. He has not done so here.

■ The next issue concerns trial counsel's failure to move for the exclusion of Sgt. Steven M. Fermon's testimony based upon his presence in the courtroom on the first day of trial. Appellant has provided the Court with a partial transcript of the relevant portion of Sgt. Fermon's testimony:

Q: You learned yesterday. Who did you learn it from?

A: I don't recall. One of the other agents, Sir.

Q: Were you in Court yesterday?

A: (Nodding head up and down.)

Q: And what did the other agent tell you?

A: Just what you said. That there was a gentleman named Jeff Roberts or Jeff Robins involved, that he introduced the people.

Based upon this testimony, Appellant argues that Sgt. Fermon was actually in the courtroom in violation of the exclusionary rule of witnesses, and that he altered his testimony because of his exposure to the testimony of the other agents. The government contends that Sgt. Fermon was in the courthouse, but that he was not present in the actual courtroom.

The trial court was, of course, aware of the rule excluding witnesses from the courtroom prior to testifying. The government was aware of the rule. And defense counsel was aware of the rule. Yet neither the Court nor either party interfered after Sgt. Fermon testified as quoted above. This certainly raises the inference that, the overall context of the testimony, and the demeanor of the witness at the time, indicated that he was merely in the building, not in the courtroom.

Even if we were to assume that Sgt. Fermon was in the courtroom, Appellant has failed to demonstrate how trial counsel's failure to object to his testimony "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

■ Appellant also argues that trial counsel was ineffective for failing to object to the leading nature of the government's questions. Failing to object to leading questions may be a matter of trial tactics and strategy. Counsel may have wanted to avoid drawing attention to certain testimony, or may have wished to avoid irritating the jury. "Strategic choices made after thorough investigation of law and facts relevant to plausible options

are virtually unreviewable." *Id.* at 690, 104 S.Ct. at 2066.

■ Finally, Appellant argues that trial counsel was ineffective for failing to call Michael Stout and Jeff Roberts as witnesses to corroborate defendant's position. There was no evidence that either Stout or Roberts had personal knowledge of anything other than Pedigo's initial meeting with Merriman to acquire the marijuana. Indeed, the calling of these witnesses could have hurt Appellant. Trial counsel's decision not to call these witnesses could certainly be viewed as a strategic choice. Furthermore, there is no evidence of prejudice here.

Appellant has failed to meet the *Strickland* standard on any of his ineffective assistance of counsel claims.

### B. Buyer–Seller vs. Conspiracy

■ Appellant's next argument concerns the difference between a buyer-seller relationship and a conspiracy. He first argues that the proof at trial was insufficient to establish a conviction for conspiracy. Alternatively, he argues that the trial court committed reversible error in refusing to give his proposed instruction concerning buyer-seller arrangements in addition to the standard conspiracy instructions covering Count 1, which charged him with conspiracy to sell over 100 kilograms of marijuana. The Court will first address the sufficiency of the evidence claim.

This Circuit has addressed the definition of a conspiracy numerous times. *See, e.g., United States v. Sababu,* 891 F.2d 1308, 1322 (7th Cir.1989) ("If there is 'one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among the parties constitutes a single conspiracy.'" (quoting *United States v. Varelli,* 407 F.2d 735, 742 (7th Cir.1969), *cert. denied,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972)). The key question is "whether the conspirators are performing different functions in pursuit of common criminal objectives."). This Circuit has also discussed the importance of distinguishing between a conspiracy and a mere buyer-seller relationship.

In *United States v. Townsend,* 924 F.2d 1385 (7th Cir.1991), the court discussed the government's burden of establishing a conspiracy as opposed to a buyer-seller arrangement. The court noted that conspiracies, like other crimes, may be proven entirely by circumstantial evidence. *Id.* at 1390. The court went on to say that, in the context of a drug distribution relationship, mere knowledge of the "hub's" activities, or those of the other spokes, is not enough to tie the conspiracy together. *Id.* at 1391. "(W)hen dealer A sells drugs to dealer B, we don't presume that A has agreed to work for the benefit of everyone else with whom B deals, or that A benefits from B's other deals. If A knows of, and benefits from, B's subsequent distribution, we may infer a limited agreement to distribute between A and B." *Id.* at 1392. Thus, mere knowledge of the illegal activities of another is not enough to support an inference of an agreement to join a conspiracy. Even active assistance is not always sufficient. "One may know of, and assist (even intentionally), a substantive crime without joining a conspiracy to commit the crime— witness the landlord who rents to an illegal gambling den, and the retailer who sells sugar to one he knows will use it to make bootleg whiskey." *Id.* at 1393 (citing cases).

■ In the context of drug distribution, therefore, the government must prove more than association. To sustain a conviction for conspiracy, the government must prove that the defendant knew of the conspiracy and intended to associate himself with the criminal scheme. *United States v. Lamon,* 930 F.2d 1183, 1191 (7th Cir.1991). "The relationship of buyer and seller *absent any prior or contemporaneous understanding beyond the mere sales agreement* does not prove a conspiracy ..." *United States v. Kimmons,* 917 F.2d 1011, 1016 (7th Cir.1990) (quoting with approval *United States v. Ford,* 324 F.2d 950, 952 (7th Cir.1963) (emphasis in original)). "(E)ven a large-scale purchase, which might support an inference that the seller knew that the buyer intended to resell the drugs, (is) insufficient to support a conspiracy conviction," *Lamon,* 930 F.2d at 1190 (citations omitted).

*United States v. Baker,* 905 F.2d 1100 (7th Cir.1990), *cert. denied,* 498 U.S. 876, 111

S.Ct. 206, 112 L.Ed.2d 167 (1990), is factually very similar to the case before us. In that case, one of the defendants bought one 200 pound load of marijuana from a conspiracy that, according to the indictment, lasted from 1984 to 1987. *Id.* at 1106. That defendant lived in Florida, while the principals lived in Indiana and harvested their crops elsewhere in the Midwest. *Id.* There was nothing in the record which suggested that the defendant participated with the principals other than this one transaction. *Id.* The court noted that there were two features which could potentially distinguish that defendant's participation from that of a simple buyer. *Id.* First, the defendant obtained the marijuana on a "front", or credit, basis, which could support an inference that he became a co-conspirator via a profit-sharing arrangement. *Id.* Second, the defendant promised to "pay" for his load through a barter-type arrangement, where he would supply more marijuana to the conspirators, implying a longer-term, reciprocal relationship. *Id.* The court, while recognizing that such features sometimes supply the required "substantial evidence of membership" for a conspiracy conviction, went on to state:

> ... cases that allow these inferences also involve repeat purchases or some other enduring arrangement that implies knowledge of the scope of the conspiracy. Knowledge is missing here. Conspiracy is an *agreement* and it is hard to see the basis for inferring that [the defendant] agreed to something the scope of which he could not have appreciated.

*Id.* The court went on to explain that, in light of the facts of that particular case, it appeared more likely that the defendant was attempting to "rip-off" the conspiracy than to join it. *Id.* at 1107.

The *Baker* case, along with other cases from this Circuit, make it clear that the government has a heavy burden when it seeks to prove conspiracy by inference. Whether that burden was met in this particular case is a very close call. Pedigo had two discrete transactions with Merriman. Although he made two separate buys, they occurred within a matter of hours. Like the defendant in *Baker*, Pedigo bought on a front basis. Like the defendant in *Baker*, there were some indications that Pedigo contem-

plated a longer-term relationship. (Note his comment that "I'm wanna work with ya for a long time.") There was no indication in the record that the defendant knew of the roles of Corral or Leutz, or that he was affected or motivated by their activities.

On the other hand, Pedigo travelled to the storage shed with Merriman and viewed the 200 kilograms of marijuana. More importantly, he helped to secure the gauze, tape, and envelopes used to aid Merriman in concealing $30,196 in drug proceeds which Merriman was taking to Corral in Phoenix. He also assisted Merriman in concealing those proceeds on his person.

■ When an appellant claims that there was insufficient evidence to prove a conspiracy, this Court must review the record in the light most favorable to the government and uphold the trier of fact's finding of conspiracy unless no rational trier of fact could have found a conspiracy based on the evidence. *United States v. Kimmons*, 917 F.2d at 1015. Under that standard of review, the Court finds that a rational trier of fact could have inferred the existence of a conspiracy based on the evidence in this case.

■ Appellant's second buyer-seller argument concerns the failure of the trial court to tender his proposed buyer-seller instructions to the jury. The government argues that this issue was waived when the defendant failed to "object" at the trial level. Rule 30 of the Federal Rules of Criminal Procedure reads in relevant part:

> "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."

The government cites this Court to *United States v. Adamo*, 882 F.2d 1218, 1231 (7th Cir.1989) for the proposition that it "is well settled that complaints regarding jury instructions not raised in the trial court are waived on appeal." *Id. Adamo* deals with a situation where the defendant argued on appeal that the trial judge committed error by failing to give a particular instruction *even though the defendant had not requested any such instruction. Id.* That is not the situation here.

In this case the defendant proposed particular buyer-seller instructions and cited supporting case-law at the bottom of his proposed instructions. The court went through the reasons for its decision to refuse the instructions. By proposing the buyer-seller instructions and citing supporting authority, the defendant made his record. Fed.R.Crim. Pro. Rule 30 does not require a defendant to continue to argue with the court once the issue has been presented to the court and ruled upon. There was no waiver of this issue at the trial level, and the plain error standard of review is not applicable.

■ In reviewing the sufficiency of jury instructions, this Circuit has held that:

> "[a] defendant is entitled to an instruction on his or her theory of defense if: the defendant proposed a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; *and* the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial."

*United States v. Grier*, 866 F.2d 908, 932 (7th Cir.1989) (quoting with approval *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987)).

Here, the defendant's proposed instructions read as follows:

> Defendant's proposed instruction # 2: "A buyer does not automatically become a member of the conspiracy. The prosecution must establish by substantial evidence that the defendant knew the existence and scope of the conspiracy and sought to promote its success."

> Defendant's proposed instruction # 3: "The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy."

It is clear that Appellant proposed a correct statement of the law, that the evidence supported his theory of defense, and that his theory of defense was not part of the charge. Although the government argues that the evidence in this case does not support the defendant's theory of the case, the above discussion concerning the sufficiency of the evidence for the conspiracy conviction conclusively shows that the evidence could be construed as supporting a buyer-seller relationship rather than the conspiracy alleged.

■ The government, however, also contends that when the record is viewed as a whole, Appellant fails to establish that he was denied a fair trial. We disagree.

■ It is axiomatic that the propriety of jury instructions must be viewed in the context of the trial as a whole, and the instructions as a whole. *Id.* at 932 (citations omitted). In this case, the government argues that the standard conspiracy instructions given by the trial court adequately protected the defendant's right to a fair trial. The government cites the Court to the following instruction:

> "In determining whether the defendant became a member of the conspiracy, you may consider only the acts and statements of that particular defendant.
>
> \* \* \* \* \* \*
>
> The government must prove that the defendant was aware of the common purpose and was a willing participant.
>
> To sustain the charge of conspiracy as charged in Count 1 the Government must prove the following propositions: First. That the alleged conspiracy existed. And, second, that the Defendant knowingly and intentionally became a member of the conspiracy."

The government also points out that during closing argument, the prosecutor told the jury, "[i]f you believe the Defendant's story, let him walk. Acquit him."

The Court first notes that closing arguments are not evidence, neither do they substitute for proper jury instructions. Secondly, a standard instruction on the elements of a conspiracy is not sufficient to inform the jury of the defendant's theory of the case. Had the jury been properly focused, via proper instructions, on the legal distinctions between a conspiracy to distribute marijuana and a mere buyer-seller relationship, the jury may well have found a buyer-seller relationship in this case. The failure to properly instruct the jury therefore denied the defendant a fair trial on Count 1. The conviction of the defendant for the conspiracy count is therefore reversed.

In light of this reversal, Appellant's argument that, if there was a conspiracy, it only encompassed the 28 kilograms that he received from Merriman, and not the 200 kilograms in the storage shed, is now moot and shall not be addressed herein.

Similarly, Appellant argues that, based upon his eleventh hour joining of the conspiracy (which he maintained did not exist), the trial court erred in its determination that he "joined Merriman on virtually the same level." (Sentencing transcript, p.7). He argues that he should have been afforded a decrease under the United States Sentencing Guidelines for being a minimal or minor participant in the conspiracy offense. That issue is now also moot and shall not be addressed herein.

### C. Co-conspirator Convictions

 Appellant's next claim concerns references to the convictions of the alleged co-conspirators Corral and Leutz during the prosecutor's closing argument and during the direct examination of Sgt. Fermon. Appellant did not object at trial, nor did he propose curative jury instructions. Because he did not preserve this issue by presenting a proper objection, this issue may now be reached only by a finding of plain error. *United States v. Blythe*, 944 F.2d 356, 359 (7th Cir.1991). This Circuit has defined plain error as "not only clear error, but an error likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, the conviction of an innocent person or the imposition of an erroneous sentence." *United States v. Newman*, 965 F.2d 206, 212 (7th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992).

In this case, Sgt. Fermon testified that Merriman, Corral, and Leutz had been arrested. During closing argument, the prosecutor congratulated Merriman for helping the government to "convict all of the members of the conspiracy." The government concedes that this was error, but argues that it did not meet the stringent requirements for a finding of plain error.

Clearly, it is prejudicial to a defendant on trial for conspiracy to have the convictions of his alleged co-conspirators paraded in front of the jury. The jury may view the issue of the defendant's guilt as a mere formality. The only legitimate use of co-conspirator convictions is for attacking the credibility of a testifying co-conspirator. *See United States v. Baez,* 703 F.2d 453 (10th Cir.1983); *United States v. Griffin,* 778 F.2d 707 (11th Cir. 1985). The references here were improper. However, there was little fanfare accompanying the parade of the convictions in this case. It cannot seriously be contended that these two brief, albeit improper, references resulted in a miscarriage of justice. The defendant fails to meet the plain error standard.

### D. Admission of Co-conspirator Hearsay Statements

 Appellant argues that the trial court committed reversible error in its treatment of the hearsay statements of Jeff Roberts, an alleged co-conspirator.

During the testimony of Merriman, the government sought to elicit the hearsay statements of alleged unindicted co-conspirator Jeff Roberts. The court asked several questions of Merriman before allowing the government to continue this line of questioning. Appellant argues that the court's questioning, in front of the jury, was improper and that the admission itself was in error. The government contends that the court's questioning was proper, that the admission was proper, and, alternatively, any error was harmless.

Federal Rule of Evidence 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court ...." In making this determination, the court is not bound by the rules of evidence except those with respect to privilege. Fed. R.Evid. 104(a).

 Out-of-court statements of co-conspirators are admissible as evidence against the accused under Fed.R.Evid. 801(d)(2)(E) if made "during the course and in furtherance of the conspiracy." *United States v. Nichols,* 910 F.2d 419, 420 (7th Cir.1990). The district court must decide by a preponderance of the evidence whether the statements were made during the course and in furtherance of a conspiracy. *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978).

■ It is not necessary to conduct a pre-trial hearing to determine the existence of a conspiracy for the purposes of admitting hearsay statements of alleged co-conspirators. *United States v. Doerr,* 886 F.2d 944 (7th Cir.1989). A trial court can "admit the [co-conspirators'] statements subject to the government's eventual proof by a preponderance of the evidence of the elements required under rule 801(d)(2)(E). If the government fails its burden, the court will either declare a mistrial or issue an appropriate limiting instruction, depending on the degree of damage done by the declarations admitted." *United States v. Andrus,* 775 F.2d 825, 837 (7th Cir.1989).

In this case, when the defense objected to the government's attempts to elicit the hearsay statements of Roberts through Merriman, the court sought to determine whether a conspiracy existed, whether the declarant and the defendant were members thereof; and if the offered statements were made during the course of and in furtherance of the conspiracy. *See United States v. Hooks,* 848 F.2d 785 (7th Cir.1988). The trial court's findings, implicit in its overruling of the defendant's objection to Merriman's testimony, are not to be reversed unless clearly erroneous. *Id.*

■ Appellant argues that the questioning of Merriman by the court told the jury that there was a conspiracy and that Pedigo was a member. He argues that Roberts was not a part of the conspiracy because he made no agreement to join, was separate from Corral and Leutz, and knew nothing about the scope of the conspiracy. Therefore, he concludes, the evidence was inadmissible.

The government responds by noting that before the court's questioning of Merriman, Merriman had already testified that the defendant was a member of a conspiracy with Corral, Leutz, and Merriman. Furthermore, the government points out, the judge's questions elicited that Merriman had agreed with Corral and Leutz to look to Roberts as a possible source of additional sales, before Merriman approached Roberts. The court was satisfied that a conspiracy had been established by a preponderance of the evidence.

Appellant has failed to demonstrate that the trial court committed clear error in its questioning of Merriman to satisfy itself that the requirements for the admission of hearsay statements of a co-conspirator were met. He has also failed to demonstrate that the trial court committed clear error in the admission of said statements.

**E. Obstruction of Justice Enhancement**

■ Appellant challenges his two-level increase under the United States Sentencing Guidelines (U.S.S.G.) for obstruction of justice. Pedigo testified at his trial that he bought the marijuana to support his own serious "habit" and that he did not have the intent to distribute. The trial court disagreed (as did the jury) and the court used this uncharged "perjury" as the basis for a two-level enhancement for obstruction of justice. A sentencing court's factual findings regarding an obstruction of justice enhancement are reviewed under a clearly erroneous standard. *United States v. Jewel,* 947 F.2d 224, 237 (7th Cir.1991).

The relevant Guideline, § 3C1.1, provides that "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense" a two-level increase is warranted. As one example of conduct warranting enhancement, Application Note 3(b) lists "committing, suborning, or attempting to suborn perjury."

■ This issue was recently addressed by the United States Supreme Court in *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In that case, the Court upheld the constitutionality of the obstruction of justice sentence enhancement for a defendant's perjury at trial. If a defendant objects to a sentence enhancement resulting from his or her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or a willful attempt to impede or obstruct justice using the ordinary definition of perjury. *Id.* —— U.S. at ——, 113 S.Ct. at 1117. The Court defined perjury as "a witness testifying under oath or affirmation ... [who] gives false testimony concerning a material matter with the willful intent

to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* —— U.S. at ——, 113 S.Ct. at 1116 (citations omitted).

In the case before us, the district court made the requested independent findings on the record. The district court evaluated the defendant's testimony against the testimony of other witnesses and found that the defendant's version of events lacked credibility. Considering the record here, that finding is not clearly erroneous.

### F. Prior Criminal Conviction

■ The defendant argues that the trial court incorrectly added one point to his criminal history category under U.S.S.G. § 4A1.2(c)(2). The conviction in question was originally charged as felony possession of marijuana. Through a negotiated plea bargain, this was reduced to a misdemeanor.

Not all misdemeanors are excluded from the calculations for a defendant's criminal history category. U.S.S.G. § 4A1.1(c) provides for "miscellaneous" convictions: "Add 1 point for each prior sentence not counted [under previous sections], up to a total of 4 points for this section." The Guideline that Appellant cites provides for exceptions to that rule and enumerates sentences that are never counted. The plain language of § 4A1.2(c) provides:

> Sentences for all felony offenses are counted. Sentences for misdemeanors and petty offenses are counted, except as follows:
>
> \*　\*　\*　\*　\*　\*
>
> (2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
>
> Hitchhiking
>
> Juvenile status offenses and truancy
>
> Loitering
>
> Minor traffic infractions (*e.g.,* speeding)
>
> Public intoxication
>
> Vagrancy

Possession of marijuana is not one of the enumerated exceptions, nor is it similar to one of those exceptions. The one point enhancement in the defendant's criminal history category was properly assessed for the conviction in question.

■ Defendant further argues that this conviction should not be counted because it was involuntary as he was not read his admonishments under Illinois Supreme Court Rule 402, (Ill.Rev.Stat., Chap. 110(A), Sec. 402, (1991)).

■ It is true that the Guidelines do provide that "[c]onvictions which the defendant shows to have been *previously ruled* constitutionally invalid may not be counted in the criminal history score." U.S.S.G. § 4A1.2, Application Note 6 (emphasis added). But it is also clear that it is the defendant who bears the burden of establishing that his prior conviction was constitutionally invalid. *United States v. Boyer,* 931 F.2d 1201, 1204 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991).

Appellant's unsubstantiated assertion on appeal that he was not read his admonishments is insufficient to establish the constitutional infirmity of his conviction.

### G. Amended Indictment

■ Appellant's final argument concerns an alleged impermissible constructive amendment of Count 3 of the indictment. Count 3 reads as follows:

> On or about January 28, 1991 in the Central District of Illinois, the defendant, Larry Joe Pedigo, knowingly, during and in relation to a drug trafficking crime *as alleged in Count 2 above,* used a firearm.
>
> In violation of Title 18, United States Code, Section 924(c)(1). (emphasis added).

Count 2 reads:

> On or about January 28, 1991 in the Central District of Illinois, the defendant, Larry Joe Pedigo, knowingly possessed with intent to distribute a quantity of marihuana, a Schedule I Controlled Substance.
>
> In violation of Title 21, United States Code, Section 841(a)(1).

Count 1 reads, in relevant part:

> [O]n January 28, 1991 in the Central District of Illinois and elsewhere the defendant, Larry Joe Pedigo, knowingly combined, conspired, confederated, and agreed with Bert A. Merriman and others to distribute in excess of 100 kilograms of mari-

huana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

At trial, the government introduced evidence of Merriman's firearm. Merriman testified that he brought the firearm with him when he traveled from Arizona to Michigan with the van of marijuana for "protection." Merriman also brought the firearm with him to Illinois, and he stored the gun in the U–Haul storage space with the marijuana.

Evidence during the trial also established that Pedigo had four firearms, legally registered to him, in his home at the time the marijuana was seized. Merriman testified that he saw these weapons in the house when he was there with Pedigo to weigh the first marijuana installment. The guns were in a separate makeshift room from the room where the marijuana and paraphernalia were found.[1] Merriman did not testify as to whether Pedigo's guns and marijuana dealings were related. The only evidence linking Pedigo's firearms and the marijuana was the close proximity of the two, which, in some cases, is sufficient for a rational jury to link the two and return with a guilty verdict for a charge of "using" a firearm in connection with a drug trafficking offense. *See United States v. Cooper,* 942 F.2d 1200, 1207 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992) (Having a gun accessible during a drug transaction is sufficient to meet the "use or carry" requirements of 18 U.S.C. § 924(c)).

By agreement between the prosecutor and defense counsel, the jury was instructed in relevant part as follows:

A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed and in furtherance of or as a natural consequence of the conspiracy, unless a conspirator did not reasonably foresee that the offense was a necessary or natural consequence of the unlawful agreement that formed the conspiracy.

Therefore, if you find Larry Pedigo guilty of the conspiracy charged in Count One and if you find beyond a reasonable doubt that while he was a member of the conspiracy, his fellow conspirator, Bert Merriman, committed the offense in Count Three in furtherance of or as a natural consequence of that conspiracy, and if you find beyond a reasonable doubt that Larry Pedigo reasonably foresaw that the offense committed by Bert Merriman in Count Three was a necessary or natural consequence of the unlawful agreement that formed the conspiracy then you should find Larry Pedigo guilty of Count Three. On the other hand, if you find that any one of these propositions has not been proved beyond a reasonable doubt, then you should find Larry Pedigo not guilty of Count Three.

During closing arguments, the prosecutor argued that the jury had two different legal theories under which they could find Pedigo guilty. He argued that if Merriman, during the course of the conspiracy, used a gun when he was conspiring with Pedigo, and if it was reasonably foreseeable that Merriman would have the weapon, then Pedigo was guilty of Count 3.[2] Alternatively, if the jury found that the firearms in Pedigo's home were "used" in relation to the drug trafficking activity, the jury should find Pedigo guilty of Count 3. Appellant argues that the introduction of the Merriman firearm, the instructions to the jury, and the closing argument of the prosecutor amounted to an impermissible constructive amendment of Count 3 of the indictment. The government responds by first arguing that the issue, which was not raised at trial, is waived and thus the standard of review is plain error. *See, e.g., United States v. Blythe,* 944 F.2d at 359; *United States v. Newman,* 965 F.2d at 212. We agree. The government also contends that there was no constructive amendment and thus the defendant fails to meet this standard. We disagree.

---

**1.** At the time of these events, Pedigo was living in the basement of his home while renovations were being done upstairs. The "living room" and "bedroom" of his temporary living quarters were separated by a partition.

**2.** In relevant part, the prosecutor argued that "if you find the Defendant was a member of a conspiracy and that Bert Merriman during the course of the time when he was conspiring with Larry Pedigo used this gun over here on the end and used it, as we have already talked about, in any manner facilitating a commission of a drug trafficking crime, and if you find that it was reasonably foreseeable for this Defendant to realize that Merriman may have a weapon, then you can find the Defendant guilty of Count 3 there."

The Fifth Amendment of the United States Constitution guarantees that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Felony charges must be brought by a grand jury and a person can only be tried for a felony *as charged* by a grand jury.

> "It is the exclusive prerogative of the grand jury finally to determine the charges, and once it has done so neither a prosecutor nor a judge can 'change the charging part of an indictment to suit [his or her] own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes.'" *United States v. Leichtnam,* 948 F.2d 370, 375–76 (7th Cir.1991) (quoting *Ex parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887)).

There are two categories of established exceptions to the above-stated general rule: 1) typographical or clerical errors; and 2) submission to the jury on a more limited or narrower version of the charges in the indictment. *Leichtnam,* 948 F.2d at 376. However, any *broadening* of an indictment, so that a trial jury is presented with more or different offenses or theories of conviction than charged by the grand jury is fatal. *Id.* at 377. It is reversible per se. *Id.* Therefore, if an amendment occurred, the plain error standard of review will not save the conviction.

On the indictment returned by the grand jury in this case, the jury could not find the defendant guilty *as charged* in Count 3 based on co-conspirator liability under Count 1 for Merriman's possible use of a firearm during and in furtherance of a drug trafficking offense. And yet the prosecutor argued,[3] and the court instructed the trial jury, that the jury could do just that. The admission of evidence concerning Merriman's firearm, the

prosecutor's closing argument, and the jury instructions on Count 3 impermissibly constructively amended Count 3 of the indictment. On the record before the Court, it is impossible to determine whether the jury found the defendant guilty as charged in Count 3 based on the firearms in his home as charged in the indictment, or for the Merriman firearm under the prosecutor's co-conspirator liability theory, which broadened the indictment. Appellant's conviction for Count 3 is reversed.

### III. Conclusion

Appellant's convictions for Counts 1 and 3 are reversed. His conviction on Count 2 is affirmed. This case is remanded to the district court for resentencing in light of the reversal of Counts 1 and 3.

### ORDER MODIFYING OPINION

Upon consideration of:

1. "MOTION TO MODIFY COURT'S OPINION" filed on December 14, 1993, by counsel for the plaintiff.

2. "RESPONSE TO MOTION TO MODIFY COURT'S OPINION" filed on January 4, 1994, by counsel for the defendant.

IT IS ORDERED that the motion to modify court's opinion is GRANTED and the court's opinion is modified as follows:

Subsequent to the issuance of the Court's opinion in the above-styled case, the government filed a motion requesting the Court to modify its opinion by clarifying that the government may retry the defendant on the conspiracy charge in count 1. The Defendant–Appellant responded by acknowledging that such a retrial is not barred by the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution, but arguing that such a retrial is not required and should not be granted in this case.

---

3. Indeed, on appeal, the government still argues that it was permissible to present a theory of co-conspirator liability for Merriman's gun to convict Pedigo of Count 3. The government states that "[h]aving charged him [without specifying a particular gun], the government was free to prove the offense by establishing beyond a reasonable doubt that the defendant used any one of

the firearms in the case in relation to his drug trafficking crime." While it is true that Count 3 did not specify a particular gun, it did specify that that gun was used in relation to a particular crime, that which was charged in Count 2. The government apparently still fails to realize that it was *not* free to prove that a gun was used in relation to a crime as charged in Count 1.

The opinion of the Court did not specifically provide for a remand for retrial. However, it was not the Court's intention to bar the government from retrying the defendant on count 1. Whether the government wishes to pursue a retrial is a matter within its discretion.

The motion of the government is thus granted. The Court's opinion is hereby modified to make clear that the Court's reversal of the conviction for conspiracy in count 1 does not preclude the government from retrying the defendant-appellant on the conspiracy charge in count 1.

It is so ordered.