NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 5, 2015
Decided August 27, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 14-1757

| | |
|---|---|
| KEVIN SMITH, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Northern District of Indiana, |
| | South Bend Division. |
| *v.* | |
| | No. 3:13-cv-509 |
| RON NEAL, Superintendent, | |
| Indiana State Prison, | William C. Lee, |
| *Respondent-Appellee*. | *Judge*. |

**O R D E R**

Kevin Smith, an Indiana prisoner, was convicted after a jury found him guilty of rape, criminal deviate conduct, criminal confinement, and sexual battery. He was sentenced to 58 years' imprisonment. At trial Smith claimed to have had a consensual sexual encounter with the victim, but testified that during the afternoon of the offense he was running errands with his son. Defense counsel presented no witnesses to corroborate Smith's testimony. Smith asserted in state post-conviction proceedings that counsel was ineffective for not investigating and calling alibi witnesses. The last state court to address this issue concluded that counsel investigated the witnesses and strategically decided not to call them in favor of a consent defense. Smith renewed the

claim in a petition under 28 U.S.C. § 2254 and after the district court denied relief, this court certified the question for appeal. Because the Indiana Court of Appeals did not unreasonably apply clearly established federal law when evaluating counsel's effectiveness, we affirm the judgment.

The facts of the crime are set forth by the Court of Appeals of Indiana in *Smith v. Indiana*, 984 N.E.2d 260, 2013 WL 653725 (Ct. App. Ind. 2013) (unpublished). According to her testimony at trial, on August 15, 2005, 18-year-old M.S. was walking past Smith's home on her way to a friend's house. M.S. had previously met Smith through his girlfriend, but M.S. and Smith were not friends and certainly not sexual partners. Smith told M.S. that his girlfriend could give her a ride home and invited M.S. inside (in reality Smith's girlfriend was not present). Once M.S. was inside, Smith locked the door and asked M.S. if she wanted to have sex, and M.S. declined. Smith then grabbed her arms, held a knife to her throat, dragged her into the bedroom, and threw her on the bed. Smith removed her shirt and then forced her to perform fellatio on him for ten to fifteen minutes under threat of anal sex. Smith also removed M.S.'s pants and tampon while M.S. struggled to free herself before Smith forced her to have intercourse with him. Smith then accompanied M.S. to the shower and instructed her to wash herself off. Smith allowed M.S. to re-dress and reinsert a tampon before he instructed her to lie down on the bed. After she complied, Smith bound her hands and feet with rope before talking to her about his custody battle for his son and giving her a cigarette. He then tied M.S. to the bedframe, put duct tape on her mouth, and left. The court concluded that the rape finished by 1:30 p.m. when Smith left. Smith returned about ten minutes later with his son, and M.S. yelled for help, causing Smith to choke her. Smith and his son left. Sometime before 4:00 p.m., M.S. was able to free herself and ran out of the house. She intercepted a passerby and told him she had been raped. The passerby saw that she was hysterical and had rope tied around her wrists; he helped untie her and called 911. A rape examination kit was performed at the hospital and Smith's DNA was discovered. Meanwhile, Smith fled to Virginia with his son.

Before trial, counsel had submitted a list of alibi witnesses to the court that included Smith's son, mother, stepfather, neighbor, and three friends. After learning about the DNA results, counsel withdrew the alibi defense in favor of a consent defense.

At trial, in addition to M.S., several witnesses were called by the prosecution. Smith was the only defense witness to testify. He testified that he and M.S. knew one another and had previously engaged in a sexual relationship. On August 15, 2005, sometime before 1:00 p.m., they had consensual sex. The condom broke, Smith testified,

and M.S. became upset and scared. She then asked for an OxyContin pill and, when he wouldn't give her one, angrily left the house. Smith picked up his son and they ran some errands that included eating lunch at Burger King, stopping at his parents' and his friend's houses, and going to two auto-parts stores. As is allowed in Indiana, *see* Ind. R. Evid. 614, jurors submitted numerous questions to Smith. One juror attempted to verify Smith's account by asking whether there was video surveillance from the Burger King or auto-parts stores. The trial court did not ask this question because it concluded that Smith would not know the answer. Smith was convicted and sentenced.

After an unsuccessful direct appeal, Smith moved for post-conviction relief arguing, as relevant here, that his counsel was ineffective for failing to interview witnesses and call them at trial. At an evidentiary hearing on Smith's petition, Smith's trial counsel, John Cantrell, testified that he remembered speaking with three witnesses that Smith had suggested to him, but had no recollection of the other seven including Smith's son, his stepfather, or one of the friends. Counsel stated that he remembered talking to Smith's mother and concluding that he would not call her because she was "tough and hard" on Smith. He also talked with "two young girls" but determined that they were "lying through their teeth" and a prosecutor would "eat them for breakfast." He decided not to pursue an alibi defense because a consent defense was more likely to be successful given the DNA test results. Ultimately, counsel concluded that although Smith had several people willing to testify that he was at their homes at various times during the afternoon of August 15, the time period was not relevant for an alibi and the DNA evidence proved Smith had sex with M.S., thus a consent defense was the appropriate strategy.

At the hearing, Smith presented eight witnesses who corroborated his trial testimony about where he was after 1:30 p.m. on August 15. Although Smith and the parties refer to these witnesses as "alibi witnesses," they are not—they corroborated what Smith said but did not provide an alibi for Smith for the time M.S. said he was raping her. Everyone confirmed that between 1:30 and 3:30 p.m., Smith was running errands with his son.

The post-conviction trial court denied relief and the Indiana Court of Appeals affirmed this decision. *Smith*, 984 N.E.2d 260, at *7. In reciting the facts gathered at the post-conviction hearing, the court stated in a footnote that Smith's neighbor testified that Smith picked up his son at 1:30 p.m., that his mother and stepfather testified that they saw Smith at their house at 2:10 or 2:20 p.m., and that "several other witnesses" testified that Smith and his son went to a friend's house. *Id.* at *2 n.3. The court found that "Smith

had provided counsel with a list of potential defense witnesses [and counsel] spoke with a number of these witnesses during his investigation," before concluding that the witnesses lacked credibility or were unhelpful. *Id.* at *4. The court concluded that counsel made a strategic decision to reject an alibi defense, a belief that the court shared given the circumstances. *Id.*

Smith petitioned in federal court for a writ of habeas corpus, *see* 28 U.S.C. § 2254, arguing that his trial counsel was ineffective for not investigating defense witnesses or presenting them at trial. The district court denied his petition and declined to issue a certificate of appealability. This court certified the question of whether Smith's counsel provided ineffective assistance at trial for withdrawing the alibi defense and failing to produce witnesses. *Smith v. Wilson*, No. 14-1757 (7th Cir. July 29, 2014).

On appeal, Smith argues that the Indiana Court of Appeals unreasonably applied both parts of the *Strickland v. Washington,* 466 U.S. 668 (1984), analysis. The State argues that Smith waived the specific ineffective-assistance theory at issue here by not arguing it in the district court. Specifically the State says that Smith never argued that the witnesses would have impeached M.S.; instead, he argued only that the witnesses would have provided an alibi. But Smith, proceeding pro se until this point, has always maintained that counsel was ineffective for not investigating and calling these witnesses, and this level of preservation is adequate to survive the State's challenge. *See Welch v. Hepp*, No. 14-1164, 2015 WL 4231144 at *3 (7th Cir. July 14, 2015) ("We will not split hairs that finely.").

Smith first challenges the Indiana Court of Appeals' analysis of counsel's performance, arguing that trial counsel should have fully investigated and presented the witnesses he had identified. For those people that counsel spoke to, the question is simply whether the state court reasonably determined that counsel justified his decision not to call them as witnesses. *See Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012). The Indiana Court of Appeals concluded that Smith's counsel was not deficient because he interviewed several of them and decided not to call them for strategic reasons. *See Smith*, 984 N.E.2d at *4. Counsel believed that on the whole the witnesses were either untruthful, too harsh, too close to Smith, or irrelevant to appear credible before jurors. *See United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) (finding that counsel did not perform deficiently when counsel investigated witnesses and then did not call them because their proposed testimony was inaccurate and the witnesses would fall apart on cross examination); *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (noting that counsel may make strategic decision not to call witness once counsel has interviewed

them to evaluate their testimony, credibility, and demeanor). The Indiana Court of Appeals reasonably applied *Strickland* when evaluating whether counsel's performance was deficient with regard to the five witnesses he actually talked to.

But the appellate court neglected to specifically discuss whether counsel interviewed the remaining witnesses—Smith's stepfather, his friend, and his son. By conflating the interviewed and non-interviewed witnesses the state court may have unreasonably applied *Strickland*. In fact, the state court's omission arguably lessens the deference owed its conclusion. *See Brady v. Pfister*, 711 F.3d 818, 826–28 (7th Cir. 2013). But counsel's decision not to speak with Smith's son, stepfather or friend was justified given what counsel knew at the time. *See Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002); *Washington v. Smith,* 219 F.3d 620, 631 (7th Cir. 2000). Counsel had interviewed Smith, Smith's mother, his neighbor, and the victim; none mentioned anything that would alert counsel that Smith's son, stepfather, or friend would have had any additional or useful information. Counsel also received the DNA test results which led him to believe a consent defense was the best trial strategy. Ultimately, the testimony of Smith's proposed witnesses does not provide Smith with an alibi for the time of the rape, which the state court found was complete by 1:30 p.m, *see Smith*, 984 N.E.2d at *2 n.5, nor does it call into question whether the sex was consensual or not. Thus, even though Smith's son, stepfather, and friend may have corroborated Smith's testimony about seeing him on the afternoon of August 15, these witnesses had nothing to offer when it came to impeaching the victim's testimony or bolstering the consent defense. *See United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989) (noting that counsel is not deficient when counsel decides not to call witnesses that will not fully corroborate the chosen defense.)

Furthermore, Smith fails to show that the decision not to call these witnesses prejudiced him, given the overwhelming amount of evidence against him at trial. M.S.'s account of the day was bolstered by the testimony of the good Samaritan whom she intercepted after the rape. This passerby testified that M.S. flagged him down outside of Smith's home and was crying, shaking, and asking for help. He stated that she hysterically told him that she had been raped and, when she got into the passenger seat of his car, she was still tied up with rope around her wrists. The man helped untie her and waited with her until police arrived. The photographs taken during the rape examination also confirmed that there were marks left by the rope on M.S.'s ankles and wrists and marks on her neck from being choked. In cases like this, where a witness's proposed testimony is only "marginally exculpatory" or when that testimony corroborates external but not "key" facts, there is not a reasonable probability that the

outcome would have been different. *See Ruhl v. Hardy*, 743 F.3d 1083, 1100–01 (7th Cir. 2014); *Brady*, 711 F.3d at 827–28; *see also United States v. Pedigo*, 12 F.3d 618, 624 (7th Cir. 1993).

Accordingly, we affirm the district court's judgment.