**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ramon PORTALES, Defendant–**
**Appellant.**

**No. 01–4001.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 2002.

Decided Nov. 22, 2002.

Before RIPPLE, MANION, and EVANS, Circuit Judges.

**ORDER**

After a bench trial, the district court found Ramon Portales guilty of conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The district court then sentenced Portales to the mandatory minimum imprisonment

of ten years. Portales appeals the district court's denial of: his motion to suppress physical evidence; a sentencing reduction under the "safety valve" of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2; and a sentencing reduction under U.S.S.G. § 3B1.2 for being a minor participant. For the reasons set forth below, we affirm.

## I. Background

At all times relevant to this litigation, Ramon Portales operated the warehouse of the RPI Pallet Company in Monee, Illinois ("RPI") and a farm in Manhattan. Illinois. On at least four occasions in the late 1990's, Portales successfully allowed drug traffickers to use the farm to offload trucks containing marijuana. The traffickers then distributed the marijuana within the Chicago area. Their luck ran out when, during a commercial vehicle inspection in January 1999, the Missouri Highway Patrol discovered that one of the trucks on its way to Portales's farm contained both limes and, in a hidden compartment, bundles of marijuana wrapped in colored paper. A Highway Patrol officer unwrapped one of the bundles, confirmed that it contained marijuana, and then re-wrapped the bundle, put it back in the secret compartment, and re-sealed the compartment. The traffickers driving the truck promptly agreed to assist authorities in a controlled delivery of the marijuana (presumably in exchange for leniency), and then proceeded to Illinois with police to deliver the marijuana to Portales's farm. When the truck reached the Chicago area, the United States Drug Enforcement Agency ("DEA") took over supervision of the controlled delivery.

As the truck drivers approached their destination, they called co-conspirators and learned that this particular shipment was to be unloaded at RPI instead of the farm. DEA agents watched the truck without interruption as, and after, it arrived at RPI on January 25. During the morning of January 26, 1999, DEA agents observed various people unload stacks of pallets from the truck to the loading docks for several hours. At about 11:25 a.m., police saw a co-conspirator enter the trailer with an orange extension cord. Then at roughly 1:50 p.m., the co-conspirator returned with a truck, towing a horse trailer. Believing that the conspirators were about to leave with the marijuana in the horse trailer, the DEA agents moved in.

In the warehouse, the agents saw, *inter alia*, crates filled with visible block-shaped bundles wrapped in colored paper. As Portales admits, "from their smell and shape, the agents believed [the bundles] contained marijuana." Without a warrant, the agents opened some of the bundles and confirmed that the bundles contained marijuana. Portales was then arrested and, as discussed above, convicted of conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).

Portales raises three issues on appeal: (1) whether the district court erred in denying his motion to suppress physical evidence of the marijuana; (2) whether the district court committed clear error in denying Portales a sentencing reduction under the "safety valve" of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2; and (3) whether the district court erred in denying Portales a sentencing reduction under U.S.S.G. § 3B1.2 for being a minor participant.

## II. Discussion

### A. Denial of Portales's Motion to Suppress

The sole issue on appeal regarding the motion to suppress is whether the agents violated Portales's rights under the Fourth

Amendment by opening the wrapped bundles of marijuana without a warrant.[1] The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" by the federal government. U.S. Const. amend. IV. A defendant seeking to suppress evidence because of a violation of the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *United States v. Sweeney*, 688 F.2d 1131, 1143 (7th Cir.1982). Specifically, the defendant must demonstrate that (1) he manifested a subjective expectation of privacy in the object of the challenged search, and (2) society is prepared to recognize that expectation as reasonable. *United States v. Myers*, 46 F.3d 668, 669 (7th Cir.1995).

Once the defendant has established standing in a case in which law enforcement did not conduct a search pursuant to a validly issued warrant, the burden of proof shifts to the government, because warrantless searches are "per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The prosecution bears the burden of establishing by a preponderance of the evidence that an exception to the warrant requirement applies. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir.2000). We review for clear error a district court's findings of fact in a suppression hearing. *United States v. Meyer*, 157 F.3d 1067, 1079 (7th

Cir.1998). We review *de novo* a district court's conclusions of law and mixed questions of law and fact. *Id.*

■ Without discussing the issue of standing, the district court held that the warrantless seizure of marijuana did not violate the Fourth Amendment because: (1) the agents had probable cause to enter the warehouse to arrest the traffickers, and the bundles of colored paper were in the agents' plain view after they did so; and (2) exigent circumstances justified the search and seizure once the horse trailer was backed up to the pallet company. Assuming *arguendo* that Portales had Fourth Amendment standing, we affirm the court below because where police conclude, based on a "practical, nontechnical probability," that a package in plain view contains illegal drugs, they may seize and open that package without a warrant. *United States v. Thornton*, 197 F.3d 241, 249 (7th Cir.1999); *see also Illinois v. Andreas*, 463 U.S. 765, 771–72, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) (discussing the controlled-delivery variation of the plain view doctrine).[2] Here, the DEA agents knew that there was a practical, nontechnical probability that the bundles wrapped in colored paper contained marijuana: The Missouri Highway Patrol had discovered, and informed the DEA agents, that at least one of the bundles wrapped in colored paper held marijuana and, as Portales admits, the agents smelled the odor of marijuana emanating from the packages. The district court was thus correct when it concluded that the warrantless search of the bundles did not violate the

---

1. Portales admits that the agents' entry into RPI was lawful, that the agents were entitled to seize any contraband that was in plain view, and that the bundles wrapped in colored paper were in plain view.

2. *Andreas* involved a controlled delivery of one container, whereas in this case the con-

trolled delivery was of numerous packages identical to the one the police opened. The agents' search of the packages likely qualifies as a controlled delivery under *Andreas*. Because *Thornton* clearly authorizes the police activity in this case, however, we need not further analyze the issue under *Andreas*.

Fourth Amendment. Because we affirm on that ground, we need not address the district court's conclusion that exigent circumstances justified the search.

**B. Denial of a Sentencing Reduction under the "Safety Valve" of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2**

Under §§ 3553(f) and 5C1.2, a district court may sentence a defendant below the statutory minimum sentence if, *inter alia,* "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan ..." *United States v. Marin,* 144 F.3d 1085, 1091 (7th Cir.1998) (quotation omitted). In other words, after meeting other requirements not at issue here, to qualify for the safety valve, a defendant must provide the government with all truthful information he has concerning his offense and related offenses. *United States v. Arrington,* 73 F.3d 144, 149 (7th Cir.1996). We review a district court's ruling on whether to grant a downward departure under the safety valve of §§ 3553(f) and 5C1.2 for clear error. *United States v. Martinez,* 301 F.3d 860, 866 (7th Cir.2002).

In this case, the district court refused to apply the "safety valve" because Portales falsely testified as to his innocence and did not come forward to give any additional information he had before the day of sentencing. As the government also points out, Portales continued to assert his innocence after conviction, telling a probation officer that "the judge found me guilty, but I am not."

Portales argues that the reasons the district court gave for denying the downward departure were inadequate. We disagree. Where, as here, a defendant continuously and falsely denies his guilt, it is not clear error for the district judge to find that defendant incredible and thus infer that the defendant has not provided the government with all truthful information he has concerning his offense and related offenses. *See United States v. O'Dell,* 204 F.3d 829, 838 (8th Cir.2000) (affirming a denial of a sentence reduction under §§ 3553(f) and 5C1.2).

**C. Denial of a Sentencing Reduction under U.S.S.G. § 3B1.2 for Being a Minor Participant**

Portales's final argument is that the district court erred in denying him a sentencing reduction under U.S.S.G. § 3B1.2(b), a provision of the Guidelines that requires a district court to reduce a defendant's sentence by two levels if it finds that he were a minor participant in the crime. *See United States v. Isienyi,* 207 F.3d 390, 392 (7th Cir.2000). Because we reject Portales's argument as to the safety valve, however, we need not reach this issue. Without application of the safety valve, Portales's ten-year sentence is the mandatory minimum and no reduction below that term of incarceration is available under § 3B1.2(b). *See United States v. Ivory,* 11 F.3d 1411, 1413 (7th Cir.1993).

**III. Conclusion**

For the reasons set forth above, we affirm.