Opinion by Judge FRIEDLAND; Concurrence by Judge McKEOWN.
OPINION
FRIEDLAND, Circuit Judge:
When the government promises not to prosecute a witness in exchange for his cooperation, it cannot then indict the witness unless it proves that he failed to cooperate. Because the government did not do so here, we remand with instructions to dismiss the indictment.
I.
From 2006 to 2007, Defendant David Mark and his then-girlfriend Kimberly Brown were employed by Distinctive Real Estate and Investments, a company run by Eve Mazzarella in Las Vegas. During Mark’s tenure, the FBI began investigating Distinctive Real Estate, Mazzarella, and her husband Steven Grimm in connection with a large-scale mortgage-fraud scheme.
In November 2007, Brown and Mark voluntarily reached out to the FBI and provided information to assist in its investigation. A few months later, in March 2008, Assistant U.S. Attorney Brian Pugh interviewed Brown and Mark to determine whether they would be good witnesses in a potential trial against Grimm and Mazza-rella. At the end of this interview, Mark expressed concern about what was going to happen to him. Pugh assured Mark and Brown that, as long as they cooperated with the government, they would not be prosecuted. Pugh later acknowledged that his statement created informal immunity agreements with both witnesses.[1]
In February 2011, Pugh called Mark to go over his testimony in preparation for the upcoming Mazzarella-Grimm trial. Assistant U.S. Attorney Sarah Griswold and an FBI agent also participated in the call, which was made to Mark’s cell phone and lasted approximately an hour. The FBI agent produced a report memorializing the discussion. For reasons unrelated to Mark, the trial was later postponed, so he was not called to testify.
In August 2011, Mark received a target letter informing him that he faced the possibility of indictment in connection with the mortgage-fraud scheme. In response to the letter, Mark hired an attorney who immediately contacted the prosecutors to set up a meeting. After unsuccessful plea negotiations during which Mark’s immunity deal was never mentioned, Mark was charged with five counts of bank fraud; *1104 one count of mail fraud; and one count of conspiracy to commit bank fraud, mail fraud, and wire fraud.
Mark’s trial began in March 2013. During Kim Brown’s testimony, she explained that in 2008 Pugh had promised her and Mark immunity from prosecution as long as they cooperated with the government. According to Mark’s attorney, this was the first time he had heard about Pugh’s promise. Three days later, Mark filed a motion to dismiss the indictment based on the informal immunity agreement.
The district court suspended the trial and held a hearing to determine whether Mark was immune from prosecution. Pugh and Griswold both testified that they called Mark in July 2011 to go over his testimony in preparation for the rescheduled Mazzarella-Grimm trial. The prosecutors recounted that, unlike when they spoke to Mark in February 2011, Mark was suddenly uncooperative and pretended not to remember anything. Pugh explained that they initiated the July 2011 call “us[ing] a speakerphone” in a conference room in the U.S. Attorney’s Office, and reached Mark “at his telephone number that [they] had from prior interviews,” an account with which Griswold agreed. Pugh further testified that an FBI agent was present during the call, and that, although he could not specifically remember which agent it was, he “believe[d] it was Sean Jones, because [Jones] was the case agent at the time.” Agent Jones testified, however, that he could not recall being part of a July 2011 phone call. Pugh acknowledged that the U.S. Attorney’s Office had no notes or other records of the call, but he testified that he sent the August 2011 target letter in response to the call. Mark, on the other hand, testified that the July call never occurred, and that he had no calls with Pugh between February and his receipt of the target letter in August.
Ruling from the bench, the district court denied Mark’s motion to dismiss. The judge credited the testimony of Pugh and Griswold and found that the July call happened as they described.
Mark’s trial continued. At the conclusion of the trial, the jury convicted Mark on multiple counts.
Shortly thereafter, Mark sought reconsideration of his motion to dismiss the indictment based on new evidence. After hearing the prosecutors’ testimony about the alleged July call, Mark had subpoenaed phone records between the U.S. Attorney’s Office and Mark’s cell phone, and had now received those records. Although the records. confirmed the February call, there were no entries showing a call to Mark in July. Mark argued that the new evidence undermined the prosecutors’ testimony and that the district court therefore should reconsider its denial of the motion to dismiss.
The district court denied Mark’s motion to reconsider, holding that there were “no sufficient grounds presented to warrant [a] further evidentiary hearing or reconsideration of [the] Court’s previous Order denying Defendant’s motion to dismiss.”
II.
A. Standard of Review
We review rulings on reconsideration motions for abuse of discretion. See United States v. Tapia-Marquez, 361 F.3d 535, 537 (9th Cir.2004). A district court abuses its discretion if it does not apply the correct legal standard or if it rests its decision on a clearly erroneous finding of fact. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir.2009) (en banc).
*1105 B. Analysis
The parties agree that Mark was given immunity in exchange for his cooperation. The dispute here is whether Mark breached the immunity agreement and thus made himself amenable to prosecution.
In order to deny the motion to dismiss the indictment, the district court had to find that Mark breached the immunity agreement. See United States v. Carrillo, 709 F.2d 35, 37 (9th Cir.1983) (“[B]ecause [the defendant] fulfilled all ... obligations under the agreement, under settled notions of fundamental fairness the government was bound to uphold its end of the bargain.”). As the government conceded at oral argument, it had the burden of proving that Mark breached. See United States v. Fitch, 964 F.2d 571, 574 (6th Cir.1992) (“If [an immunity] agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal.”); see also United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir.1988) (holding that the government has the burden of proof to show breach of a plea agreement). The government must prove a breach of an-immunity agreement by a preponderance of evidence. See United States v. Castaneda, 162 F.3d 832, 836 (5th Cir.1998); United States v. Meyer, 157 F.3d 1067, 1078 (7th Cir.1998); United States v. Gerant, 995 F.2d 505, 508 (4th Cir.1993); see also Packwood, 848 F.2d at 1011 (requiring that the government show the defendant breached a plea agreement by a preponderance of evidence).
Initially, the district court accepted the prosecutors’ account that Mark suddenly became uncooperative during a July call&emdash;an account that did, when credited, support the finding that Mark had breached the immunity agreement. In his motion to reconsider, however, Mark presented phone records that contradicted the prosecutors’ testimony about the July call. The district court did not explain why, despite the new phone records, it chose not to hold a further evidentiary hearing or otherwise reconsider its earlier order denying the motion to dismiss. In light of the scant record supporting the government’s claim of a breach and clear evidence that key details of the government’s story were inaccurate, the district court abused its discretion when it failed to either grant Mark’s motion for reconsideration or order an additional evidentiary hearing.
The government’s only evidence of breach was testimony by Pugh and Gris-wold that Mark became uncooperative during a July 2011 phone call. The prosecutors testified that they and an FBI agent made the call to Mark’s cell phone from a speakerphone in a conference room at the U.S. Attorney’s Office. That account, however, is directly contradicted by the phone records that Mark presented in his motion to reconsider. The records show that there were no calls between the U.S. Attorney’s Office and Mark’s cell phone during the month of July.
The absence of phone records corroborating the July call stands in stark contrast with the February call. Both sides agree that Pugh, Griswold, and an FBI agent interviewed Mark over the phone in February 2011 in preparation for the Maz-zarella-Grimm trial. The phone records show a call on February 1 from the U.S. Attorney’s Office to Mark’s cell phone that lasted approximately an hour, as well as several shorter calls the day before.
The February conversation was also memorialized in a report prepared by the FBI agent who participated in that call. The July call, on the other hand, which purportedly had the same trial-preparation purpose, was not memorialized by the prosecutors or by any FBI agent. The *1106 government did not dispute at oral argument that the usual practice in the U.S. Attorney's Office was to keep notes during any such interview. Here, however, there are no notes from a July call, and the FBI case agent at the time testified that he had no recollection of such a call. The government has failed to supply an explanation for either of these gaps in the record.
The government also did not dispute at oral argument that a target letter to a witness who previously had an immunity deal would ordinarily describe the defendant’s breach. But the target letter Mark received does not mention a July call, or any other instance of a breach, to explain why the government suddenly considered Mark a target rather than a cooperating witness.
Perhaps at a further evidentiary hearing the prosecutors could have reconciled their recollections that a call happened with all of the apparent evidence to the contrary. But the government has urged us not to remand for an evidentiary hearing and instead has expressed a desire to stand on the existing record. When asked whether remanding the case for a further evidentia-ry hearing would be appropriate, the government attorney stated: “I can’t imagine that at a further evidentiary hearing ... that anything else is going to get unearthed.” When pressed further on whether the government would “stake its claim” on the existing record, he answered “correct.” We therefore evaluate whether, on the current record, the government met its burden of proving that Mark breached.
The government’s only affirmative evidence of a breach is the testimony of Pugh and Griswold, which was directly contradicted by the phone records. This is insufficient to prove that Mark stopped cooperating during a July call, particularly in light of the lack of any notes memorializing a call or any mention of a call in the target letter. This is troubling because the government made clear at oral argument that it is the typical practice of the office to keep such records.[2] Cf. Fed.R.Evid. 803(7) (providing that the “Absence of a Record of a Regularly Conducted Activity” may be evidence that “the matter did not occur or exist”). In light of the gaps and contradictions in the record, the district court’s failure to either grant Mark’s motion for reconsideration or order an additional evidentiary hearing was an abuse of discretion.[3]
III.
For the foregoing reasons, we reverse the district court’s denial of Mark’s motion to reconsider and remand with directions to dismiss the indictment.
REVERSED and REMANDED.

. Brown's immunity agreement was at issue in United States v. Mazzarella, 784 F.3d 532, 538 (9th Cir.2015).

. At oral argument, the government also acknowledged that it had searched the phone records for calls between the U.S. Attorney’s Office and any number in Louisiana, which is where Mark’s cell phone was registered and where he had lived after leaving Las Vegas, but had found nothing.

. Mark raised two other issues on appeal. Because we are remanding with instructions to the district court to dismiss the indictment, we need not reach those additional issues.